UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KINROSS GOLD CORPORATION, a corporation, and EASTWEST GOLD CORPORATION, a corporation,<br><br>Plaintiffs,<br><br>v.<br><br>DOUGLAS GERALD WOLLANT, an individual, TANDEM AND ASSOCIATES, a corporation, and DABLE, INC., a corporation,<br><br>Defendants. | CASE NO. C10-1516-RSM<br><br>ORDER DENYING MOTION TO DISMISS OR TRANSFER |

## I. INTRODUCTION

This matter comes before the Court upon Defendants' Motion to Dismiss Plaintiffs' Complaint Due to Improper Venue or, In the Alternative, Transfer Venue (Dkt. #12). For the reasons stated below, the Court DENIES Defendants' motion.

ORDER DENYING MOTION TO DISMISS OR TRANSFER - 1

## II. BACKGROUND

This case involves a fraudulent kickback scheme wherein Defendants purportedly conspired with third parties to charge Plaintiffs hidden commissions for its services in facilitating the shipment of materials to Plaintiffs' mining operations in Russia. Plaintiff Kinross Gold Corporation ("Kinross") is a Canadian Company with its principle place of business in Toronto, Ontario. In February 2007, Kinross acquired mining interests in Eastern Russia, which required shipping of supplies and equipment. Plaintiff EastWest Gold Corporation ("EastWest") was created as a wholly-owned subsidiary of Kinross to manage financial transactions related to Kinross operations in Russia. EastWest is a Canadian corporation with its principal place of business in Vancouver, British Columbia.

Defendants Douglas Wollant and Dable, Inc. ("Dable") provided supply chain support for the Russia operations pursuant to a verbal agreement with Kinross. Wollant is an individual and resident of Montana. Dable is a Montana corporation with its principle place of business in Bozeman, Montana. The final party in this lawsuit is Tandem and Associations ("Tandem"). Tandem is also a Montana corporation with its principal place of business in Bozeman, Montana. Tandem was allegedly created as a special enterprise for receiving hidden commissions from Kinross and EastWest.

In May 2007, Plaintiffs asked Wollant to send invitations to various companies to bid for a shipping contract with EastWest. Wollant did so. The contract was ultimately given to Fesco and Fesco Agencies North America, Inc. ("Fesco, N.A."). Wollant and Dable negotiated the price with Fesco, N.A.'s president, Aspi Rostami, on behalf of Plaintiffs. Fesco, N.A. is a corporation organized and existing under the laws of Washington, with its principal office and place of business in Seattle, Washington. In performing the contract with EastWest, Fesco, N.A.

primarily shipped goods from the Port of Everett in the state of Washington.  Wollant frequently travelled to Washington State to fulfill his duties under his contract with Kinross.  Between October 2008 and 2009, Wollant travelled to Washington at least one time per month.  Dkt. #22 at ¶6.

Pursuant to the shipping contract, Fesco, N.A. invoiced EastWest for ocean freight, ice dues, and bunker surcharges.[1]  Fesco, N.A. sent the invoices to EastWest from its offices in Seattle, Washington.  Kinross wired the payments to Fesco, N.A.'s bank account in Renton, Washington.  Similar contracts between Fesco and EastWest were negotiated by Wollant and Dable for the years 2008 and 2009.

According the complaint, in April or May of 2007, Wollant, Dable and Rostami agreed that Wollant and Rostami would receive five per cent in hidden commissions for ocean freight services provided by Fesco for EastWest.  This agreement was memorialized in a brokerage agreement between Fesco and Tandem, which was signed by Rostami and Wollant.  In 2008 and 2009 new brokerage agreements were executed that included an additional hidden commission of 30 percent on profits Fesco and Fesco, N.A. made on container sales to Plaintiffs.  Wollant, Dable and Rostami shared all of the hidden commissions.

To provide for the hidden commissions, Rostami prepared price calculation sheets for EastWest that forecast the costs associated with the shipping services Fesco provided to EastWest with the hidden commissions built into those costs.  The hidden commissions were not revealed for what they were on the price calculation sheets.  Fesco invoices that were ultimately submitted to EastWest also included the hidden commissions.  The invoices were approved by

---

[1] Ice dues are a tariff established by the Russian government for vessels entering certain ports in northern waters.  Bunker surcharges are fuel costs as established through published rates.

ORDER DENYING MOTION TO DISMISS OR TRANSFER - 3

1  Wollant and Dable and Plaintiffs upon Wollant and Dable's advice.  Wollant and Dable then
2  prepared Tandem invoices for the hidden commissions, which were sent to Fesco in Washington.
3  Payments from Fesco to Tandem were wired from Seattle, Washington to Bozeman, Montana.
4  Defendants then sent the payments from Tandem to Wollant's personal account or to Dable's
5  account.  Plaintiffs allege that Wollant frequently communicated with and met with Mr. Rostami
6  in Washington State as part of the conspiracy to defraud Kinross.  Dkt. #22, Ex. E.
7       Plaintiffs believe that Wollant's share of the hidden commissions generated through
8  Tandem was in excess of $2 million.  Plaintiffs bring causes of action against Defendants for
9  fraud, RICO violations, civil conspiracy, conversion, unjust enrichment, and breach of fiduciary
10 duty.  Defendants seek to dismiss Plaintiff's complaint due to improper venue pursuant to Fed.
11 R. Civ. P. 12(b)(3) or, in the alternative, transfer venue to the District of Montana for the
12 convenience of the parties pursuant to 28 U.S.C. § 1404(a).

### III. DISUCSSION

**A.  Motion to Dismiss for Improper Venue**

15       Where there are multiple defendants, "venue must be properly laid as to each defendant."
16 *Eaby v. Richmond,* 561 F.Supp. 131, 140 n. 2 (E.D.Pa.1983) (citing *Piedmont Label Co. v. Sun*
17 *Garden Packing Co.,* 598 F.2d at 493).  For purposes of venue, a defendant that is a corporation
18 shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at
19 the time the action is commenced. 28 U.S.C. § 1391(c).  In a State which has more than one
20 judicial district, the corporation shall be deemed to reside in any district in that State within
21 which its contacts would be sufficient to subject it to personal jurisdiction if that district were a
22 separate State. 28 U.S.C. § 1391(c).  Dable and Tandem are both corporations subject to personal

1  jurisdiction in this district.  Therefore, the issue at bar is whether venue is appropriate as to
2  Wollant.
3          Where subject matter jurisdiction is not founded solely on diversity, such as in this case,
4  venue is proper only in (1) a judicial district where any defendant resides, if all defendants reside
5  in the same State; (2) a judicial district in which a substantial part of the events or omissions
6  giving rise to the claim occurred, or a substantial part of property that is the subject of the action
7  is situated; or (3) a judicial district in which any defendant may be found, if there is no district in
8  which the action may otherwise be brought. 28 U.S.C. § 1391(b).  Here, the Defendants do not
9  all reside in the same state, and there are other jurisdictions, such as Montana, where the action
10  might otherwise be brought.  Therefore, the parties ask the Court to determine whether a
11  substantial part of the events or omissions giving rise to Plaintiffs claims occurred in the Western
12  District of Washington.
13          In determining the issue of substantiality, the Court must look to "the entire sequence of
14  events underlying the claim[s], and focus on the defendants' (rather than the plaintiff's) actions."
15  *Lee v. Corr. Corp. of Am.,* 525 F. Supp. 2d 1238, 1241 (D. Haw. 2007).  Here, the Court is
16  satisfied that a substantial part of the events giving rise to Plaintiffs' claims occurred in the
17  Western District of Washington.  Rostami, Fesco, and Fesco, N.A., which are not parties to this
18  action, all reside in Seattle, WA.  Defendants correctly note that Plaintiffs cannot lay venue in
19  Washington based solely on these co-conspirator's actions in Washington.  *See Piedmont Label*
20  *Co. v. Sun Garden Packing Co.,* 598 F.2d 491, 492 (9th Cir. 1979).  However, Plaintiffs show
21  that Wollant communicated and met with Rostami on multiple occasions in Washington State.
22  Dkt. #22, ¶¶ 6 & 7.  In addition, Tandem received the disputed commissions by wire transfers
23  emanating from Seattle, WA.  Dkt. #20 at ¶12.  Tandem also sent mail and email to Fesco, in
24

1  Seattle, WA, containing the allegedly fraudulent invoices.  Finally, and most importantly, the

2  shipping operations contract, around which the entire commission scheme was orchestrated, was

3  centered on the Port of Everett, in Washington.  The Court DENIES Defendants' request to

4  dismiss for lack of venue pursuant to Fed. R. Civ. P. § 12(b)(3).

**B.  Motion to Transfer**

Even if the court determines that venue is proper, it may still transfer for the convenience of parties and witnesses, in the interest of justice. 28 U.S.C. § 1404(a). The purpose of section 1404(a) is to "prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal quotations omitted).  The statute "displaces the common law doctrine of *forum non conveniens*" with respect to transfers between federal courts.  *See Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).

Section 1404(a) is not simply a codification of the common law doctrine.  In passing § 1404(a), Congress "intended to permit courts to grant transfers upon a lesser showing of inconvenience" than was needed for dismissal under the doctrine of *forum non conveniens*. *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955).  The decision to transfer an action is left to the sound discretion of the trial court, and must be determined on an individualized basis.  *See Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).

The statute has two requirements.  First, the district to which defendants seek to have the action transferred must be one in which the action "might have been brought." 28 U.S.C. § 1404(a).  Second, the transfer must be for the "convenience of parties and witnesses," and "in the interest of justice." *Id.*  Here, the Court finds that the action clearly could have been brought in the District of Montana.  Both Dable and Tandem are Montana corporations with principle offices in Montana.  Defendant Wollant resides in Bozeman, Montana.  There is no dispute that

1 the District of Montana would have subject matter jurisdiction over the claims. Therefore the

2 primary issue for the Court to resolve is whether the second requirement of § 1404(a) has been

3 met.

4       A determination of whether transfer is appropriate under § 1404(a), requires "subtle

5 considerations" involving several factors. *See Commodity Futures Trading Commission v.*

6 *Savage*, 611 F.2d 270, 279 (9th Cir. 1979). A plaintiff's choice of forum is accorded substantial

7 weight. *Securities Investor Protection Corp. v. Vigman,* 764 F.2d 1309, 1317 (9th Cir.1985).

8 Courts generally will not order a transfer unless the "convenience" and "justice" factors strongly

9 favor venue elsewhere. *Id.* A transfer will not be ordered if the result is merely to shift the

10 inconvenience from one party to another party. A transfer should only be ordered when the

11 transferee forum is clearly more convenient. *Decker Coal Co. v. Commonwealth Edison Co.,* 805

12 F.2d 834, 843 (9th Cir.1986). Factors to be considered include, "(1) the location where the

13 relevant agreements were negotiated and executed, (2) the state that is most familiar with the

14 governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the

15 forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the

16 differences in the costs of litigation in the two forums, (7) the availability of compulsory process

17 to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of

18 proof." *Jones v. GNC Franchising, Inc.,* 211 F.3d 495, 498-499 (9th Cir. 2000).

19       Even though the Court's discretion is broader under § 1404 than it was under the

20 common law doctrine of *forum non conveniens,* the Court may also consider factors drawn from

21 the traditional common law analysis. *See Los Angeles Memorial Coliseum Commission v.*

22 *National Football League,* 89 F.R.D. 497, 499 (C.D. Cal. 1981), citing *Norwood v. Kirkpatrick*,

23 349 U.S. 29, 32 (1955). Such considerations include court congestion, the pendency of related

24

litigation in the transferee forum and the public's interest in adjudicating the controversy in the chosen forum. *See Decker Coal*, 805 F.2d at 843. *See also Jones,* 211 F.3d at 499 ("We also conclude that the relevant public policy of the forum state, if any, is at least as significant a factor in the § 1404(a) balancing.")

Because Plaintiff's choice of forum is entitled to deference, Defendants have the burden of showing that "the convenience of the parties and the witnesses" and the "interest of justice" requires transfer to another district. *Savage*, 611 F.2d at 279. Here, Defendants have not met that burden. Defendants argue that the following factors all weigh in favor of transfer: witnesses, access to proof, relative means of the parties, relative congestion, and local interest. However, many of these factors either favor retaining the action in this district or do not mitigate in favor of either district.

"The convenience of and accessibility of witnesses is of considerable importance." *Kachal, Inc. v. Menzie*, 738 F.Supp. 371, 373 (D.Nev. 1990). While Defendants reside in Montana, Defendants' alleged co-conspirators are located in this district. Moreover, all of the activity on which commissions were charged took place in this district. Therefore, a greater number of witnesses will likely be found in the Western District of Washington than in Montana, and the ability to compel the participation of non-party witness will be facilitated by retaining the case in this district. Similarly, Defendants' records may be located in Montana, but a fair amount of evidence will likely also be located in this district because both Fesco and Port of Everett documents are located here.

With respect to the relative means of the parties, the Court is not persuaded that justice or convenience favors transferring the action to Montana. While Kinross is a large corporation with possibly greater access to funds, Defendants have provided no evidence that traveling to the

Western District of Washington would be overly burdensome under these circumstances. In addition, although Montana has an interest in adjudicating the disputes of Montana citizens and corporate citizens, Washington also has an interest in adjudicating a dispute that centers on a shipping operation based in the Port of Everett. Finally, while the District of Montana may carry a smaller case load than the Western District of Washington, the median time from filing to disposition is more than three months shorter in this district, indicating that the difference in congestion is not a strong factor in favor of transfer. *See* Dkt. #13 at 9.

Considering all of the factors together, transfer to the District of Montana is unwarranted. The Plaintiffs' choice of forum, which is given a great deal of weight, together with the presence of witnesses in this district, the ability to subpoena non-party witnesses, and the interest of Washington in adjudicating this dispute, outweigh any considerations that would favor a transfer pursuant to 28 U.S.C. § 1404(a) to Montana. The Court will uphold Plaintiffs' choice of forum.

## IV. CONCLUSION

Having reviewed the relevant pleadings, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby finds and ORDERS:

(1) Defendants' Motion to Dismiss Plaintiffs' Complaint Due to Improper Venue or, In the Alternative, Transfer Venue (Dkt. #12) is DENIED.

(2) The Clerk is directed to forward a copy of this order to all counsel of record.

Dated March 9, 2011.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE